**UNITED STATES of America,
Plaintiff,**

v.

**Ferdale WATKINS, Defendant.**

No. 1:07–CR–67.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Jan. 14, 2008.

Steven S. Neff, U.S. Department of Justice, Chattanooga, TN, for Plaintiff.

Rita C. Lalumia, Federal Defender Services of Eastern Tennessee, Inc., Chattanooga, TN, for Defendant.

## MEMORANDUM

CURTIS L. COLLIER, Chief Judge.

At defendant Ferdale Watkins' ("Defendant") sentencing hearing held on December 20, 2007, the Court heard his Motion for Variance (Court File No. 96). This motion was amended at the sentencing hearing to alternatively request a downward departure within the United States Sentencing Guidelines, as promulgated by the United States Sentencing Commission (Nov.2007) ("USSG" or "Guidelines"). *See* USSG § 5K2.0(a)(2)(B). At the hearing, the Court granted Defendant's motion for a downward departure, because application of the Guidelines as written produced an irrational result. This memorandum elaborates on that decision, explaining in more detail the nature of the departure within the Guidelines in conformity with the underlying principles and purposes of the Guidelines.

## I. ISSUE

The abnormality presented in this case is that Defendant's offense level under the Guidelines is increased solely by converting the quantity of the crack cocaine involved into its marijuana equivalent. In simple terms, this means the Guidelines produce a different and higher offense level if crack cocaine is converted into its marijuana equivalent than if the same quantity of crack cocaine is simply calculated as crack cocaine. Because Defendant was found in possession of both crack cocaine and powder cocaine, the Guidelines instruct the Court to convert both drugs into their marijuana equivalents. *See* USSG § 2D1.1 comment. (n. 10(D)). The powder cocaine was of such a small quantity that it had no effect upon the resulting offense level. Regardless, due to the crack cocaine conversion, Defendant is subject to a higher offense level. *See* USSG § 2D1.1 comment. (n. 10(D)(i)(II)).

## II. FACTS AND APPLICATION

Defendant pleaded guilty to conspiracy to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. His base offense level

is calculated with the following drug quantities: 96.36 grams of crack cocaine and 27.95 grams of powder cocaine. Because Defendant possessed more than one type of drug, the Guidelines require the Court to reach a base offense level, and corresponding sentencing range, which considers the aggregate amount of drugs. *See* USSG § 2D1.1 comment. (n. 1 0(D)). To do so, the Guidelines provide equivalency rates to convert the crack cocaine and powder cocaine to their equivalent amounts of marijuana for sentencing. *See* USSG § 2D1.1 comment. (n. 10(D)(i)(II), (E)).

The calculations for the crack cocaine conversion are as follows: to convert crack cocaine to its marijuana equivalent, the Guidelines provide conversion rates which vary according to the base offense level of the crack cocaine. USSG § 2D1.1 comment. (n. 10(D)(i)(II)). Here, Defendant's offenses involved 96.39 grams of crack cocaine, resulting in an offense level of 30 (which includes offenses involving at least 50 but less than 150 grams of crack cocaine). At offense level 30, the marijuana equivalency is 14 kilograms of marijuana per 1 gram of crack cocaine. *Id.* Therefore, Defendant's 96.39 grams of crack cocaine convert to 1349.46 kilograms of marijuana. Although 96.39 grams of crack cocaine fall within the middle of the range for a level 30 crack cocaine offense, the converted marijuana amount of 1349.46 kilograms results in an offense level of 32 (which includes offenses involving at least 1,000 but less than 3,000 kilo-

grams of marijuana). This increase in offense level occurs prior to adding the marijuana-equivalent amount of the powder cocaine.[1]

The Guidelines provide a fixed conversion ratio for powder cocaine of 200 grams of marijuana for every gram of powder cocaine. USSG § 2D1.1 comment. (n. 10(E)). As a result, Defendant's 27.95 grams of powder cocaine result in 5.59 kilograms of marijuana-equivalent. *See id.* This amount is less than half of one percent of the 1349.46 kilograms of the marijuana-equivalent converted from the crack cocaine, and does not affect Defendant's offense level.

## III. ANALYSIS

### A. Departure Within the Guidelines

The Guidelines provide sentencing ranges for particular offenses, circumstances, and characteristics of the defendant, but provide for departures in unusual cases where the Guidelines did not fully incorporate the circumstances of that case. USSG § 1A1.1, Pt.A, comment. (n. 4(b)), policy statement; *accord* USSG § 5K2.0, policy statement. The Sentencing Commission "does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure," and recognizes its case analysis in forming the Guidelines is neither perfect nor complete. *Id.* These policy statements coincide with the corresponding statutory language, which recognizes it is impossible for the

---

**1.** Upon further inquiry, the Court found this increase occurs when crack cocaine amounts in the following ranges are converted to their marijuana equivalents:

6.25—19.99 grams (a level 24 crack cocaine offense increases to a level 26 marijuana-equivalent offense);

71.43—149.99 grams (a level 30 crack cocaine offense increases to a level 32 marijuana-equivalent offense);

447.77—499.99 grams (a level 32 crack cocaine offense increases to a level 34 marijuana-equivalent offense); and,

4477.62—4499.99 grams (a level 36 crack cocaine offense increases to a level 38 marijuana-equivalent offense).

These offense-level increases are caused by the varying crack cocaine conversion rates under USSG § 2D1.1 comment (n. 10(D)(i)(II)).

Guidelines to account for all circumstances. *See* 18 U.S.C. § 3553(b)(1). District judges are specifically authorized and encouraged to depart from an otherwise applicable guideline when it encounters an "atypical case." USSG § 1A1.1, Pt. A, comment. (n. 4(b)). However, even when application of a specific guideline does not account for a unique circumstance, sentencing courts must still consider, no less vigorously, the fundamental principles and body of experience found within the Guidelines. *See* 18 U.S.C. § 3553(b)(1); USSG § 5K2.0(a)(1)(A), policy statement.

Pursuant to 18 U.S.C. § 3553(b)(1), the Court is authorized to sentence a defendant independently of the Guidelines, as Defendant requests in moving for a variance. However, under current sentencing jurisprudence, the Court must properly calculate the applicable guideline range and must consider both the Guidelines and that properly calculated guideline range. *See Gall v. United States,* — U.S. —, — — —, 128 S.Ct. 586, 596–98, 169 L.Ed.2d 445 (2007); *United States v. McElheney,* 524 F.Supp.2d 983, 988 (E.D.Tenn.2007); *United States v. Phelps,* 366 F.Supp.2d 580, 584–85 (E.D.Tenn. 2005). Only after having correctly calculated the applicable guideline range does the sentencing judge consider all of the factors set out in 18 U.S.C. § 3553(a). If the district court determines that a sentence within the properly calculated guidelines is sufficient to fulfill the § 3553(a) factors, then the judge should impose such a sentence.

Here, the Court concludes that after determining the correct guideline range, including appropriate departures, the resulting range provides for a sentence that is sufficient, but no greater than necessary to comply with the purposes of § 3553(a). Accordingly, there is no need for the Court to impose a non-guideline sentence in this case, or in the words of Defendant, a variance. When the initial calculation of the sentencing range under the Guidelines produces an anomalous result, for purposes of "administration and to secure nationwide consistency," *Gall,* 128 S.Ct. at 596, the Court is best served by making a departure to the appropriate range within the Guidelines, guided by the fundamental purpose and principles of the Guidelines. *See* USSG § 5K2.0, policy statement.

## B. Proportionality

In considering whether a result is an anomaly, the Court looks to the structure and underlying theory or philosophy of the Guidelines. One of the underlying theories that runs throughout the Guidelines is that those more culpable should face greater sentences. For crimes where amounts or quantities are involved, the Guidelines generally instruct that these amounts and quantities should be taken into account and the larger amount or quantity should result in a greater sentence. This is the principle of proportionality. In formulating the Guidelines, "Congress sought proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity." USSG § 1A1.1 comment. (ed.n. 3), background. Pursuant to 18 U.S.C. § 3553(a)(6), "the court, in determining the particular sentence to be imposed, shall consider ... the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

This proportionality is evident throughout the Guidelines. The severity of single-drug offenses are clearly delineated by the amount of the illegal substance and the dangers that substance creates. *See* USSG § 2D1.1(c). This same practice is seen with respect to many other sections of the Guidelines where a greater amount

or quantity results in a greater Guideline offense level. *E.g.* USSG §§ 2B1.1(b)(1), (2) (embezzlement); 2B3.1(b)(3), (7) (robbery); 2L1.1(b)(2), (7) (transporting and harboring illegal aliens).

In drug cases proportionality requires offenses involving greater amounts of the same drug to be punished more severely than lesser amounts of that drug. *See* USSG § 2D1.1(c). When the Guidelines are applied as written, Defendant is subject to a more serious offense level than defendants charged with greater amounts of crack cocaine. *See* USSG § 2D1.1 comment. (n. 10(D)(i)(II)). This occurs because the crack-cocaine-to-marijuana conversion rate for a level 30 offense (involving at least 50 grams and not more than 150 grams of crack cocaine) is 14 kilograms of marijuana per gram of crack cocaine (14:1), while the conversion rate for a level 32 offense (involving at least 150 grams and not more than 500 grams) is only 6.7 kilograms of marijuana per gram of crack cocaine (6.7:1)—less than half the rate of a level 30 offense. *See* USSG § 2D 1. 1(c)(4), (5); comment. (n. 10(D)(i)(II)).

When applied in Defendant's case, his 96.39 grams of crack cocaine (level 30) are converted to 1349.46 kilograms of marijuana-equivalent (14:1), while a defendant with 150 grams of crack cocaine (53.61 grams more than Defendant) would only be attributed with 1005 kilograms of marijuana-equivalent (6.7:1). *See* USSG § 2D1.1 comment. (n. 10(D)(i)(II)). Thus, a defendant possessing over 50 additional

grams of crack cocaine would be attributed with 305 fewer kilograms of marijuana-equivalent. *See id.*

As a further comparison, a defendant with 201 grams of crack cocaine (a level 32 offense, converting at 6.7:1), over twice that of Defendant, would be attributed with approximately the same amount of marijuana-equivalent (1346.70 kilograms) as Defendant, who possessed 96.39 grams of crack cocaine (1349.46 kilograms of marijuana-equivalent). *See* USSG § 2D1.1 comment. (n. 10(D)(i)(II)). Thus, a strict application of the Guidelines as written would punish Defendant more severely than defendants with substantially more crack cocaine. This is not a result the Court thinks the Sentencing Commission contemplated. For this reason the Sentencing Commission would approve a departure.

Second, proportionality requires involvement with more serious drugs to be punished more severely. Here, Defendant would receive a substantially harsher sentence from the powder cocaine than from the crack cocaine, despite crack cocaine being considered by Congress and the Sentencing Commission a more dangerous drug.[2] To result in a level 32 offense for crack cocaine, a defendant must be charged with at least 150 grams but less than 500 grams. USSG § 2D1.1(c). Defendant possessed 96.39 grams of crack cocaine (a level 30 offense). To be subject to a level 32 offense based *solely* on crack cocaine, Defendant would need to have

---

**2.** *See* 21 U.S.C. §§ 841(b)(1)(A)(ii, iii) (where 5 kilograms of powder cocaine is punished to the same degree as 50 grams of crack cocaine, thereby punishing crack cocaine 100 times more severe than powder cocaine); USSG § 2D 1.1 comment. n. 10(D)(i)(II), (E) (where 1 gram of powder cocaine is equivalent to 200 grams (.2 kilograms) of marijuana, while 1 gram of crack cocaine is equivalent to 5–16 kilograms of marijuana); *United States*

*v. Williams,* 962 F.2d 1218, 1227 (6th Cir. 1992) (recognizing Congress had good reason to punish crack cocaine more severely, because (1) crack cocaine is more potent, and thus more addictive; and, (2) crack cocaine is sold more cheaply and in smaller size, thus encouraging its use and transport); *United States v. Pickett,* 941 F.2d 411, 418 (6th Cir. 1991) *(accord); United States v. Avant,* 907 F.2d 623, 627 (6th Cir.1990) *(accord).*

possessed 53.61 additional grams of crack cocaine. *See id.* Since Defendant is subject here to a level 32 offense due to possessing multiple drugs, proportionality requires the second drug to have the severity of 53.61 grams of crack cocaine to warrant an increase in offense level from 30 to 32. The additional drug involved is 27.95 grams of powder cocaine.

It is anomalous to allow 27.95 grams of powder cocaine, a drug constituting a less serious offense,[3] to result in the same punishment as 53.61 grams of crack cocaine. Yet, if the Court were to blindly follow the Guidelines here, the Court would sentence Defendant at a base offense level of 32. This is not a result this Court nor the Sentencing Commission would countenance.[4]

As the above analysis demonstrates, the operation of the crack cocaine conversion rate in this case results in an anomalous and disproportionate sentence. The Court must determine the appropriate Guideline

for Defendant, taking into account the text, structure and underlying philosophy of the Guidelines. *See* 18 U.S.C. § 3553(a)(6).

### C. Determining the Appropriate Base Offense Level within the Guidelines

As discussed above, increasing Defendant's offense level based solely on the conversion of the crack cocaine results in an anomalous result. The Court must therefore determine the appropriate base offense level for Defendant's sentence to avoid these anomalies. *See* 18 U.S.C. § 3553(a)(6). Defendant's base offense level for the unconverted crack cocaine is 30. *See* USSG § 2D1.1(c)(5). The Court determines this as the appropriate base offense level in this case for both the crack and powder cocaine, as follows:

Crack cocaine is punished more severely than powder cocaine. *See, e.g.,* 21 U.S.C. §§ 841(b)(1)(A)(ii), (iii). Yet even if the

---

3. *See, e.g.,* 21 U.S.C. §§ 841(b)(1)(A)(ii, iii).

4. Here, converting the crack cocaine alone raised Defendant's offense level. Courts should be vigilant for proportionality problems which arise even when the second drug's marijuana-equivalent is required to raise the offense level. For example, consider a defendant with 71.36 grams of crack cocaine (a level 30 offense) and 1 kilogram of marijuana. When the crack cocaine is converted, it results in 999.04 kilograms of marijuana-equivalent, still a level 30 offense. However, when the 1 kilogram of marijuana is added, the aggregate drug amount involved is 1000.04 kilograms, resulting in a base offense level of 32.

Such a sentence, however, would be giving 1 kilogram of marijuana the sentencing weight of 78.64 grams of crack cocaine. Since the crack cocaine offense level range for level 30 is at least 50 grams but less than 150 grams, a second drug that increases the offense level to 32 is being given the same punishment weight as 78.64 grams of crack cocaine (the difference between 150 grams

and the 71.36 grams of crack cocaine charged).

To further illustrate this point, this hypothetical defendant, with 71.36 gram of crack cocaine and 1 kilogram of marijuana, would receive the same base offense level as a defendant with 150 grams of crack cocaine and no other drug. Furthermore, both defendants, other factors equal, should warrant the same sentence under the Guidelines because both of their offenses are at the bottom of level 32; 150 grams of crack cocaine and 1000.04 kilograms of marijuana are at the low drug ranges for crack cocaine and marijuana for level 32.

A defendant would, paradoxically, be better off under the Guidelines to have 149.99 grams of crack cocaine (a level 30 offense) than 78.64 grams of crack cocaine and 1 kilogram of marijuana (a level 32 offense).

Due to the severity of the crack-cocaine-to-marijuana conversion rates for offense levels 24, 30, 32, and 36, Courts should be extremely cautious when sentencing multi-drug defendants with crack cocaine amounts at those offense levels. *Cf. supra* note 1.

Court viewed the 27.95 grams of powder cocaine as 27.95 grams of crack cocaine, Defendant's total amount of crack cocaine, 124.34 grams, would still fall within the level 30 base offense range. Thus, that offense level is sufficient to account for, without overstating, the amount of powder cocaine in Defendant's possession.

Furthermore, the powder cocaine involved results in a marijuana-equivalent of 5.59 kilograms. *See* USSG § 2D1.1 comment. (n. 10(E)) (converting 1 gram of powder cocaine to 200 grams of marijuana). The Court notes the amount of marijuana-equivalent for the powder cocaine is less than one percent of the marijuana required for a base offense level of 30 (i.e. at least 700 kilograms and not more than 1,000 kilograms), and less than one-half of one percent of the marijuana-equivalent from the crack cocaine (i.e. 1349.46 kilograms). *See* USSG § 2D1.1(c)(5); USSG § 2D1.1 comment. (n. 10(D)(i)(II)). Thus, the powder cocaine is comparatively minor, and does not warrant an increase of two offense levels.

### D. Non–Guideline Sentence

As explained above, the Court denied Defendant's motion for a non-guideline sentence, what Defendant referred to as a variance. The Court does not see a necessity to consider a non-guideline sentence because it has determined it could reach the appropriate sentence within the Guidelines by properly departing downward within the Guidelines.

However, had the Court not been able to calculate the proper guideline range for some reason, it would have used its authority under 18 U.S.C. § 3553(a) to impose the same sentence it determined after deciding a departure was appropriate. Under § 3553(a), the Court is required to impose a sentence that avoids unwarranted sentencing disparities, and assures the principle of proportionality is maintained.

*See* 18 U.S.C. § 3553(a)(6); *Kimbrough v. U.S.,* —— U.S. ——, 128 S.Ct. 558, 573–74, 169 L.Ed.2d 481 (2007).

## IV. CONCLUSION

The Guidelines are based in part upon the principle of proportionality, and this Court is charged with sentencing more serious crimes more severely. *See* 18 U.S.C. § 3553(a)(6); USSG § 1A1. 1 comment. (n. 3), background. As discussed above, sentencing Defendant at a base offense level of 30 provides a sufficient punishment, while avoiding disproportionate disparities with other defendants guilty of more serious drug offenses. For these reasons, the Court **GRANTED IN PART** Defendant's motion for a departure within the Guidelines, determining the appropriate base offense level as 30, pursuant to USSG § 5K2.0(a)(2)(B) (Court File No. 96). The Court **DENIED IN PART** Defendant's Motion for Variance for a non-guideline sentence (Court File No. 96).